**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| BOYD SMITH, | : | MOTION TO VACATE |
|    Movant, | : | 28 U.S.C. § 2255 |
| | : | |
|    v. | : | CRIMINAL INDICTMENT NO. |
| | : | 1:08-CR-0041-JEC-JFK-2 |
| UNITED STATES OF AMERICA, | : | |
|    Respondent. | : | CIVIL FILE NO. |
| | : | 1:11-CV-4015-JEC |

## <u>MAGISTRATE JUDGE'S FINAL</u>
## <u>REPORT AND RECOMMENDATION</u>

Movant Boyd Smith, represented by L. Burton Finlayson, seeks via 28 U.S.C. § 2255 to challenge the constitutionality of his conviction and sentence entered in this Court under the above criminal docket number. The matter is before the Court on Movant's *pro se* § 2255 motion, as amended by counsel, (Docs. 178, 193); Movant's motion for a new trial based on newly discovered evidence, (Doc. No. 195); the government's response to Movant's *pro se* § 2255 motion and response to Movant's counseled amendment and motion for a new trial, (Docs. 187, 206); and Movant's reply, (Doc. 215).[1]

---

[1]Movant has replied to the government's response to his § 2255 amendment and motion for a new trial. (Doc. 215 at 1). Movant has not replied to the government's response to his initial *pro se* § 2255 motion, and the time has passed for doing so.

I.    **Background**

The Grand Jury sitting in the Northern District of Georgia indicted Movant on one count of arson, in violation of 18 U.S.C. §§ 2, 844(i), (n), for conspiring to damage and destroy by fire the Club Onyx, in Atlanta, Georgia.  (Doc. 22).  At trial, Sandeo P. Dyson testified that Movant introduced the idea of burning down the Onyx Club; that he, Movant, and Howard Thrower discussed the arson in meetings and agreed that he, Dyson, would do the act; that he burned the club down; and that he called Movant and Thrower after he completed the arson to let them know he had completed the mission.  (Doc. 163 at 256-62).  Stefan Andre Champagne testified (1) that Dyson told him that he had burned down Club Onyx and that the bosses had wanted it burned down and (2) that Dyson always referred to "the bosses" when speaking of Movant and Thrower.  (Doc. 164 at 474-75).  Mary Elizabeth Clark testified that Movant told her "we are going to burn down Onyx tonight" and also told her that "we" included himself, Dyson, and Thrower.  (Id. at 540).  Thrower testified that he, Dyson, and Movant had discussed burning the Onyx many times; that they agreed to burn the Onyx; that Dyson was the one who set the fire; and that Movant paid Dyson.  (Doc. 165 at 557-58).

2

On February 25, 2009, the jury found Movant guilty. (Doc. 108). On January 14, 2010, the Court sentenced Movant to a sixty-month term of imprisonment. (Doc. 141). On December 30, 2010, the Eleventh Circuit Court of Appeals affirmed the judgment against Movant. (Doc. 176, Attach.).

In his § 2255 motion now before the Court, Movant raises five grounds for relief: (1) counsel provided ineffective pre-trial assistance, (2) counsel provided ineffective trial assistance, (3) prosecutorial misconduct, (4) counsel provided ineffective assistance in failing to preserve the prosecutorial misconduct claims for direct appeal, and (5) prosecutorial misconduct in failing to inform Movant that Dyson was involved in an information-for-sale scheme during the time that he testified in Movant's case.[2] (Doc. 178 at 5-9; Doc. No. 193 at 9-38).

After filing the amendment to his § 2255 motion, Movant sought discovery via a Brady[3] motion and then filed a second motion for discovery. (Docs. 194, 208). On

---

[2]Movant also filed a *pro se* motion to supplement (pertaining to Champagne's trial testimony) and motion for judicial notice (pertaining to Dyson's involvement in the information-for-sale scheme). (Docs. 179, 181). The Court appointed counsel and directed Movant to amend. (Doc. 189 at 3-4). The Court denied the above motions as moot when Movant, with counsel, withdrew the Champagne claim and amended his Dyson claim. (Doc. 193 at 9-36; Doc. 204 at 4-5). Movant's counseled amendment of his Dyson claim supersedes and replaces his initial *pro se* Dyson claim.

[3]Brady v. Maryland, 373 U.S. 83, 87 (1963).

3

March 19, 2013, the government responded to Movant's discovery requests. (Doc. 210). Movant did not file a timely reply in regard to the response to his discovery requests. The discovery requests were submitted to the undersigned for a decision, and on April 9, 2013, the undersigned addressed the parties arguments and denied Movant's requests for discovery. (Doc. 212).

The Court extended the time for Movant to reply to the government's response to the § 2255 amendment and motion for a new trial, (see Doc. 209; Doc. 212 at 10; Doc. 216), and Movant filed his "Reply Brief" on May 3, 2013. (Doc. 215). Therein, Movant states that he is replying to the government's response to his discovery requests and to the government's response to his § 2255 amendment and motion for a new trial. (Id. at 1). Movant states that he is entitled to reasonable discovery and an evidentiary hearing. (Id.). Movant asserts that there are factual issues to be resolved, i.e., whether the government knew at the time of Movant's trial that Dyson was involved in the information-for-sale scheme. (Id. at 6). Movant also belatedly replies to the government's arguments in its response to Movant's discovery requests and submits revised discovery requests. (Id. at 14-22).

The discovery motions were submitted to the Court for disposition in April of this year, and the Court reviewed the arguments on discovery that the parties chose to

4

submit.  Movant's belated reply on discovery matters needlessly wastes judicial resources, and, to the extent that Movant seeks reconsideration, his request shall be denied.  Movant's request for an evidentiary hearing – which he seeks in regard to Ground Five – is discussed with Ground Five below.

## II.   Standard

Section 2255 of Title 28 allows a district court to vacate, set aside, or correct a federal sentence that was imposed in violation of the Constitution or laws of the United States or was imposed by a court without jurisdiction, exceeds the maximum sentence authorized by law, or is otherwise subject to collateral attack.  28 U.S.C. § 2255. Collateral relief, however, is limited, and "[o]nce [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted[.]"  United States v. Frady, 456 U.S. 152, 164 (1982).  A "final judgment commands respect[, and] . . . a collateral challenge may not do service for an appeal." Id. at 165.  Thus, a defendant "must assert all available claims on direct appeal," Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004), and claims that a § 2255 movant could have asserted on direct appeal, but did not, generally are procedurally barred absent (1) a showing of cause for the default and actual prejudice or (2) a showing of a fundamental miscarriage of justice or actual innocence, McKay v. United

5

States, 657 F.3d 1190, 1196 (11th Cir. 2011), cert. denied, _ U.S. _, 133 S. Ct. 112 (2012).[4] Section 2255 relief "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." Lynn, 365 F.3d at 1232 (quoting Richards v. United States, 837 F.2d 965, 966 (11th Cir. 1988)) (internal quotation marks omitted); see also Massaro v. United States, 538 U.S. 500, 505-09 (2003) (holding that a constitutional claim of ineffective assistance of counsel generally is properly raised on collateral review in order to allow for adequate development and presentation of relevant facts).

––––––––––––––––––

[4]"[T]o show cause for procedural default, [a movant] must show that some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal . . . " or that the matter was not raised because of ineffective assistance of counsel. Lynn, 365 F.3d at 1235; see also Reece v. United States, 119 F.3d 1462, 1468 (11th Cir. 1997) (holding that, absent an "objective factor external to the defense" as cause, the movant must show that the default was caused by ineffective assistance of counsel (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)) (internal quotation marks omitted)).  If a movant shows cause, he also must show prejudice – that the error complained of "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Reece, 119 F.3d at 1467 (emphasis in original) (quoting Frady, 456 U.S. at 170) (internal quotation marks omitted).  To make a credible showing of actual innocence, "a movant 'must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt' in light of . . . new evidence of innocence." McKay, 657 F.3d at 1196 (alteration in original) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).

On collateral review, the defendant is no longer presumed innocent, the conviction is presumed valid, and it is the movant's burden to establish his right to relief. See Dist. Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 68-69 (2009) (citing Herrera v. Collins, 506 U.S. 390, 399 (1993)); Mackey v. United States, 221 F. App'x 907, 910 (11th Cir. 2007) (stating that § 2255 movants have the "burden of establishing their right to relief from the judgment against them").  "An evidentiary hearing is not required when 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"  Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (quoting § 2255).  That is the case here, as shown in the discussion below.

III.    **Discussion**[5]

A.      **Ground One**

In Ground One, Movant asserts that counsel provided ineffective pre-trial assistance by failing to:  (1) investigate/obtain financial records to counter the government's motive theory; (2) obtain alibi evidence regarding Movant's whereabouts in mid and late December; (3) obtain evidence of Clark's prior

---

[5]The Court follows Movant's formatting of his claims although some of Movant's claims overlap and are somewhat repetitive.

7

untruthfulness; (4) obtain and develop audio evidence that exculpates Movant;
(5) interview David White, Carlos Lopez, Jason South, and Mario Freese regarding the
prior acts and untruthfulness of co-defendants; (6) interview and depose Javier Shubert
and Tjuan Tarpkins regarding Movant's alibi and the untruthfulness of co-defendants;
(7) obtain Dyson's service records to prove prior acts of untruthfulness and memory
problems; (8) develop a reasonable trial strategy;[6] and (10) hire an investigator to
conduct a reasonable investigation.  (Doc. 178 at 5).  The claims are discussed
separately below, preceded by a review of the relevant trial proceedings when
necessary.

A criminal defendant possesses a Sixth Amendment right to "reasonably
effective" legal assistance.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  To
show constitutionally ineffective assistance of counsel, a movant must establish that
(1) counsel's representation was deficient and (2) counsel's deficient representation
prejudiced him.  Id. at 690-92.  The Court may resolve an ineffective assistance claim
based on either of the above prongs.  Bottoson v. Moore, 234 F.3d 526, 532 (11th Cir.
2000).  Under the first prong, a movant must show that "in light of all the

---

[6]Movant has withdrawn claim nine of Ground One presented in his original
§ 2255 motion.  (See Doc. 178 at 5; Doc. 193 at 36).  Although claim nine has been
deleted, the Court retains Movant's numbering.

circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.  Under the second prong, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.  A movant has the burden of affirmatively proving prejudice, and a "conceivable effect" on the proceedings does not show prejudice.  Wood v. Allen, 542 F.3d 1281, 1309 (11th Cir. 2008) (quoting Strickland, 466 U.S. at 693) (internal quotation marks omitted).  The movant has the burden of establishing his claim by a preponderance of competent evidence. Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc).

"Defense counsel must conduct a pretrial investigation that is reasonable under the circumstances." Walker v. Sec'y, Fla. Dep't of Corr., 495 F. App'x 13, 17 (11th Cir. 2012) (citing Futch v. Dugger, 874 F.2d 1483, 1486 (11th Cir. 1989)).  "While we do not require that a lawyer be a private investigator in order to discern every possible avenue which may hurt or help the client, we do require that the lawyer make an effort to investigate the obvious." House v. Balkcom, 725 F.2d 608, 618 (11th Cir. 1984); see also Alderman v. Terry, 468 F.3d 775, 792 (11th Cir. 2006) (stating that counsel

9

has "'no absolute duty to investigate particular facts or a certain line of defenses'" (quoting <u>Fugate v. Head</u>, 261 F.3d 1206, 1217 (11th Cir. 2001))).

To show prejudice, a petitioner must make a showing regarding the evidence, witnesses, or testimony that reasonable pre-trial investigation would have yielded and must demonstrate that there is a reasonable probability that the evidence would have changed the outcome at trial.  <u>See</u> <u>United States v. Arnulfo-Sanchez</u>, 219 F. App'x 796, 798 (10th Cir. 2007) (rejecting claim that counsel was ineffective for failing to hire an expert when the petitioner failed to present any evidence demonstrating that there was a reasonable probability that such expert's testimony would have changed the outcome at trial); <u>Gilreath v. Head</u>, 234 F.3d 547, 552 n.12 (11th Cir. 2000) ("requiring petitioner to show that witnesses not presented at trial actually were available and willing to testify at time of trial" (citing <u>Horsley v. State of Ala.</u>, 45 F.3d 1486, 1494-95 (11th Cir. 1995)); <u>Laird v. United States</u>, 987 F.2d 527, 529 (8th Cir. 1993) (stating that an ineffective pre-trial assistance claim based upon the existence of certain statements fails absent any offer of proof of those statements); <u>Bradbury v. Wainwright</u>, 658 F.2d 1083, 1087-88 (5th Cir. Unit B Oct. 1981) (holding that the petitioner failed to show that counsel provided ineffective assistance by failing to acquire certain reports and records when there was no evidence as to what the reports

and records would have established, i.e., that they "would have established Bradbury's insanity defense"); Martin v. Jamrog, No. 01-CV-74160-DT, 2002 WL 31008956, at *7 (E.D. Mich. 2002) ("[D]efendant has not presented any evidence or offer of proof, either below or on appeal, indicating that any useful information not presented at trial actually exists. Therefore, he has not established the requisite prejudice necessary to prevail on a claim of ineffective assistance of counsel." (citation and internal quotation marks omitted)).   Absent a concrete showing regarding the alleged evidence that counsel could have obtained, there is no ineffective assistance of counsel for failing to obtain the evidence.   Harrison v. United States, Nos. 1:09-CV-90051 (HL), 1:07-CR-45-003 (HL), 2012 WL 2878861, at *9 (M.D. Ga. April 19, 2012) ("[A]s there is no evidence that any conversations were taped, Petitioner is merely speculating that the alleged tapes contained evidence that Weaver lied while testifying during Petitioner's trial. Any allegations that the outcome of the trial would have been different if trial counsel would have demanded the nonexistent tapes are speculative at best.").

### 1.   Claim One

Movant contends that counsel provided ineffective assistance by failing to investigate or obtain financial records to counter the government's theory that financial

11

reasons motivated Movant's attempt to destroy the Onyx Club.  (Doc. 178, Br. at 4).

The government responds, among other things, that this claim fails because Movant

does not describe what, if any, evidence counsel might have discovered that would

have assisted the defense.  (Doc. 187 at 14-16).

The undersigned agrees with the government.  Absent any showing regarding

the financial records that counsel could have obtained and presented at trial, Movant

fails to show prejudice.  See Bradbury, 658 F.2d at 1087-88 (holding that the petitioner

failed to show that counsel provided ineffective assistance by failing to acquire certain

reports and records when there was no evidence as to what the reports and records

would have established).

### 2.    Claim Two

At trial, Dyson testified that he met with Movant and Thrower to discuss

methods of shutting down the Onyx Club and that Movant eventually suggested arson.

(Doc. 163 at 251-52, 256-58, 269-70).  Dyson testified that the conversations regarding

arson occurred approximately two weeks before Christmas, in 2006.  (Id. at 310-11).

Thrower testified that he, Dyson, and Movant discussed arson but did not clearly

identify when the discussions were held.  (Doc. 164 at 557-58, 592-96; Doc. 166 at

753-55).  At trial, Movant testified that he was in Chicago with Clark from December 19 through 29, 2006.  (Doc. 167 at 919).

Movant argues that counsel provided ineffective assistance by failing to obtain alibi evidence for Movant's whereabouts in mid/late December 2006 to contradict testimony that in mid/late December Movant had been involved in numerous closed-door meetings regarding the arson conspiracy.  (Doc. 178, Br. at 5).  Movant states that he provided counsel with information on a vehicle rental, credit card use, and travel to Chicago, and with the names of witnesses to establish that he was not in Atlanta and did not participate in the mid/late December meetings.  (Id.).  The government argues that Movant fails to provide the names of the alleged witnesses who would have testified that he was in Chicago or provide any detail on how the alleged information would have impeached the testimony that he participated in the arson-discussion meetings.  (Doc. 187 at 16-17).  The government also argues that Movant cannot show prejudice because even if he had established that he was in Chicago as Movant had testified at trial, the evidence otherwise demonstrated his participation in the conspiracy.  (Id. at 20).

Movant does not identify the alleged witnesses who could have established that he was not in Atlanta in mid/late December or show that they were available and

AO 72A
(Rev.8/82)

willing to testify.  Movant, therefore, fails to show prejudice based on counsel's failure to obtain those witnesses.  See Gilreath, 234 F.3d at 552 n.12 ("requiring petitioner to show that witnesses not presented at trial actually were available and willing to testify at time of trial" (citing Horsley, 45 F.3d at 1494-95).  Movant provides no detail on the other documentary evidence (car rental and credit card charges) and does not indicate which specific testimony the documentary evidence would have impeached.  The Court notes that even if Movant established that he was in Chicago from December 19 through 29 (as he testified), it would not have impeached Dyson's testimony that the arson conversations occurred approximately two weeks before Christmas (approximately December 11) and would not have impeached Thrower's testimony, which was non-specific as to when the conversations occurred.  Movant's allegations in this claim are insufficient to meet his burden of affirmatively proving prejudice.

### 3.   Claim Three

At trial Clark testified that she had seen Movant, Thrower, and Dyson have closed-door meetings more than once.  (Doc. 165 at 537-38).  Clark further testified that she went with Movant to Chicago in December 2006 for a few days but that she could not remember the exact dates and did not think that it was as many as eleven days.  (Id. at 542-43).

14

Movant asserts that Clark testified to his whereabouts with her and his attendance of closed-door meetings, that her credibility was an issue, and that counsel provided ineffective assistance by failing to obtain evidence of Clark's prior untruthfulness against Movant in a DeKalb County case in which she admitted lying about injuries that she had alleged Movant had inflicted on her. (Doc. 178, Br. at 5-6). The government argues that Movant cannot show that counsel was unreasonable in failing to impeach Clark with her prior untruthfulness because any potential benefit would have been countered by the fact that Movant was eventually convicted of terroristic threats in the DeKalb County case. (Doc. 187 at 23).

Movant's reference to Clark's testimony about her whereabouts with him appears to refer to their Chicago visit. Movant cannot show prejudice based on that testimony, however, because Clark's testimony on the Chicago visit did not significantly contradict Movant's testimony, and, even if Clark's testimony had agreed with Movant's that they were in Chicago from December 19 through 29, it would not have significantly contradicted Dyson's and Thrower's testimony that Movant was a part of the conspiracy, as discussed above in Ground One, Claim Two. Movant also has not established prejudice based on counsel's failure to impeach Clark's testimony that Movant had closed door meetings with Thrower and Dyson. Clark simply testified

that the meetings occurred and did not testify as to the content of those meetings, and there was other testimony before the jury that Movant, Thrower, and Dyson had met and that the content of those meetings was a discussion of arson.  Movant's allegations in this claim are insufficient to meet his burden of affirmatively proving prejudice.

### 4.    Claim Four

Movant refers to the undercover audio recordings of co-defendants discussing the offense (introduced at trial by the government) and argues that counsel provided ineffective assistance by failing to obtain and develop those audio recordings and identify "points where the offense was discussed and [Movant] was mentioned yet exculpated[.]" (Doc. 178, Br. at 6).  The government argues that Movant's claim fails because he does not show how the recordings could have been used to enhance his defense, because counsel did review the recordings and identify the portions in which Movant was discussed, and because the recordings did not exculpate Movant in the arson.  (Doc. 187 at 24-25).

This claim fails because Movant has not identified any portion of the audio recordings that exculpate him and has not carried his burden of affirmatively proving prejudice.

16

5.  **Claim Five**

At trial, counsel sought to cross-examine Thrower regarding his bad character based on multiple arrests.  (Doc. 165 at 615-17).  The Court found that Thrower's violence, assaults, and aggression were not relevant to his credibility and did not allow cross examination on Thrower's violence.  (Id. at 618-21).

Movant argues that counsel provided ineffective assistance by failing to interview White, Lopez, South, and Freese regarding their knowledge of the prior acts and untruthfulness of co-defendants.  (Doc. 178, Br. at 7-8).  Movant also arguably asserts that counsel was ineffective for failing to bring out Thrower's 2003 assault conviction, which was discussed in United States v. South, 295 F. App'x 959, 963 (11th Cir. 2008) ("According to South, . . . Thrower had been arrested for threatening and beating a contractor who was remodeling Thrower's house.").  (Doc. 178, Br. at 8).  The government argues that this claim fails because Movant does not show that White, Lopez, South, or Freese would have testified or provided evidence that would have changed the outcome of the trial.  (Doc. 187 at 27-28).

Ground One, Claim Five fails because Movant does not show, by affidavit or otherwise, that White, Lopez, South, or Freese would have provided, or testified to, the information that Movant asserts they would have provided.  See Gilreath, 234 F.3d at

17

552 n.12.   Further, Movant cannot show ineffective assistance based on counsel's failure to bring out Thrower's violence as shown by his alleged 2003 assault conviction – counsel sought to cross-examine Thrower in regard to past violence, and the Court did not allow it.

### 6.   <u>Claim Six</u>

Movant asserts that counsel provided ineffective assistance by failing to interview and depose Shubert and Tarpkins – who both died before trial – regarding Movant's alibi and the untruthfulness of co-defendants.  (Doc. 178, Br. at 8).  The government argues that this claim fails because Movant is only speculating and fails to show what information they would have provided.  (Doc. 187 at 31).

Ground One, Claim Six fails because without any showing regarding what Shubert's and Tarpkins's deposition testimony would have been Movant cannot show prejudice.

### 7.   <u>Claim Seven</u>

At trial, Dyson admitted that he was not a United States Army Ranger.  (Doc. 163 at 274).  Dyson also testified that he had been "hit in the head a lot" and that he had difficulty remembering exact dates.  (Doc. 163 at 332).

18

Movant now asserts that counsel provided ineffective assistance by failing to obtain Dyson's service records to show that Dyson was not a Ranger, had been punished for theft while in the army, and had suffered head injuries that had affected his memory, which could have been used to undermine Dyson's credibility before the jury. (Doc. 178, Br. at 9). The government responds that this claim fails because Movant does not show that such information exists, because Dyson admitted that he was not a Ranger and that he had received blows to the head and had difficulty remembering dates, because the Court likely would not have admitted evidence of Dyson's theft to show untruthfulness, and because counsel otherwise impeached Dyson. (Doc. 187 at 33-35).

Absent a proffer of the alleged testimony or evidence that counsel should have obtained and presented and that would have changed the outcome, a movant fails to show prejudice. Hill v. Moore, 175 F.3d 915, 923 (11th Cir. 1999) (holding that absent proffer of evidence that would require a particular jury charge, the petitioner could not show prejudice based on counsel's failure to introduce such evidence); Harrison, 2012 WL 2878861, at *9 ("Petitioner is merely speculating that the alleged tapes contained evidence that Weaver lied . . . "); Martin, 2002 WL 31008956, at *7 ("[D]efendant has not presented any evidence or offer of proof, either below or on

19

appeal, indicating that any useful information not presented at trial actually exists." (citation and internal quotation marks omitted)).

Movant fails to show prejudice because Dyson admitted that he was not a Ranger and had difficulty remembering dates and because Movant makes no proffer regarding the alleged information counsel should have presented. Notably, Movant did reply to the government's response on this claim, (Doc. 187), and has remained silent in regard to any proffer even after the government pointed out his failure to show that the alleged information exists. (See Doc. 215).

**8.   Claims Eight and Ten**

In Ground One, Claim Eight, Movant asserts that counsel failed to develop a reasonable trial strategy. (Doc. 178, Br. at 9-10). Movant states that counsel could have attacked witness credibility with prior inconsistent statements, prior acts of untruthfulness, alibi evidence, evidence countering financial motive, and exculpatory evidence in the audio recordings. (Id. at 10). In Ground One, Claim Ten, Movant asserts that counsel provided ineffective assistance by failing to hire an investigator to conduct a reasonable investigation. (Id. at 11-12). Movant asserts that counsel failed to interview several witnesses; investigate criminal, personnel, or financial records;

20

discover investigative reports and portions of audio recordings, or investigate agency policies.  (Id.).

The government responds that Claim Eight fails because Movant does not specify the evidence or information that could have been used.  (Doc. 187 at 35).  As to Claim Ten, the government, among other things, reasserts its argument that Movant fails to come forward with specifics that support his claim.  (Id. at 40).

On Ground One, Claims Eight and Ten, Movant again fails to make any proffer of the evidence that counsel should have used.  See Hill, 175 F.3d at 923; Harrison, 2012 WL 2878861, at *9; Martin, 2002 WL 31008956, at *7.  Moreover, Movant again remains silent in regard to any proffer even after the government pointed out his failure to identify what the evidence would have shown.  Claims Eight and Ten fail.

**B.** **Ground Two**

In Ground Two, Movant asserts that counsel provided ineffective trial assistance by failing to:  (1) use prior inconsistent statements to impeach Thrower; Dyson; Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Agent John Paul; and Federal Bureau of Investigation (FBI) Agent Mark Sewell; (2) call witnesses White, Lopez, South, and Freese; (3) introduce evidence of Clark's prior acts of untruthfulness; (4) ask relevant questions and subject the government's case to a

21

meaningful adversarial testing;[7] (6) argue that there was a lack of evidence against Movant until after Dyson's arrest; (7) request jury instructions on prior acts of untruthfulness, the limits of vicarious conspiracy, and the memory problems of witnesses; (8) object to the government's reference at closing to facts not in the record; and (9) present a reasonable defense. (Doc. 178 at 6). Through counsel, Movant also amends Ground Two and asserts that counsel provided ineffective assistance (10) in failing to cross-examine Thrower, Dyson, Agent Paul, and Agent Sewell with certain under-cover recordings; (11) by failing to properly understand and use the Federal Rules of Evidence when seeking admission of certain bad acts by government witnesses; and (12) by failing to bring out on cross examination an uncharged aggravated assault by Dyson and Thrower. (Doc. No. 193 at 36-38).

The Strickland standard again applies.

---

[7]Movant has withdrawn claim five of Ground Two presented in his original § 2255 motion. (See Doc. 178 at 6; Doc. 193 at 35).

1.   **Claim One**

In Ground Two, Claim One, Movant asserts that counsel provided ineffective trial assistance by failing to impeach witnesses Thrower, Dyson, Agent Paul, and Agent Sewell with their prior inconsistent statements.  (Doc. 178, Br. at 13-14).

a.   **Thrower's Testimony**

At trial, Thrower testified that Movant told him that Dyson was going to take care of it and that they were going to burn the club.  (Doc. 165 at 592-93).  Thrower testified that he had told investigators Paul and Turner everything about the Onyx fire.  (Doc. 166 at 665).  Thrower testified that he had not talked with Dyson about Movant on any of the undercover audio recordings.  (Id. at 677).  Thrower also testified that Movant quit working for him because he stated that he had better job offers.  (Id. at 689).  Counsel cross-examined Thrower on certain statements that he had made about Movant in the under-cover audio recordings, and Thrower stated he could not recall whether he talked about Movant at that time.  (Doc. 167 at 888, 891-93).

Movant claims that counsel was ineffective for failing (1) to impeach Thrower's trial testimony – that it was Movant who told him they were going to burn the club – with Thrower's prior statement – recorded in (unidentified) investigative reports – that Dyson had come to him about burning the Onyx Club, (2) to impeach Thrower's trial

23

testimony – that he told Paul and Turner everything about the Onyx fire – with Thrower's prior failure to say anything about Movant in (unidentified) investigative reports, (3) to impeach Thrower's trial testimony – that Movant quit because he had better job offers – with Thrower's original statement that he fired Movant for poor performance, and (4) to impeach Thrower's trial testimony – that the recordings did not mention Movant – with unspecified agents' statements that Movant is mentioned on the undercover audio recordings.  (Id. at 13).

The government argues, among other things, that, absent any evidence that Thrower adopted the summaries of his statements and representations as set forth in investigative reports, those reports could not be used to impeach Thrower, and counsel was not ineffective for failing to do so.  (Doc. 187 at 46 (citing United States v. Saget, 991 F.2d 702, 710-11 (11th Cir. 1993)).

"[A] witness may not be impeached with a third party's characterization or interpretation of a prior oral statement unless the witness has subscribed to or otherwise adopted the statement as his own."  Saget, 991 F.2d at 710.  Absent any showing by Movant that Thrower subscribed to the interpretation of his statement as set forth in the investigative reports (which Movant has not identified), it cannot be said that counsel was ineffective for failing to impeach Thrower with the investigative

24

reports.   Further, in Ground Two, Claim One, Movant provides no citation to Thrower's alleged prior statement that he fired Movant for poor performance or to the unspecified agents' statements on the undercover recordings.  Without a citation to or other way to verify the alleged prior statements, the Court cannot find that counsel was ineffective for failing to use those statements to impeach Thrower's trial testimony.

### b.   <u>Dyson's Testimony</u>

Movant asserts that counsel was ineffective for failing (1) to impeach Dyson's trial testimony – that it was Movant who suggested going "Michael Childs" (shorthand for using arson to burn a club) – with the ATF's statement that Dyson said Thrower suggested going "Michael Childs" and (2) to impeach Dyson's testimony – that Movant initiated the idea of burning the club – with Thrower's statement in the investigative report that Dyson had come to him with the idea of burning the club. (Doc. 178, Br. at 13-14).

The government again argues that, absent any evidence that Dyson adopted the ATF statement on what he said, the ATF statement could not be used to impeach Dyson and that counsel was not ineffective for failing to do so.  (Doc. 187 at 46).

Absent any showing by Movant that Dyson or Thrower subscribed to the interpretation of their statements as set forth in ATF statements or investigative

reports, it cannot be said that counsel was ineffective for failing to impeach Dyson with a third party's characterization of his or another witnesses' statements.

### c.       Paul's and Sewell's Testimony

Movant argues that counsel was ineffective for failing to (1) use conflicting statements made during grand jury proceedings and suppression hearings to impeach Paul and Sewell and (2) use testimony that the government had redacted the undercover recordings to impeach testimony that there was no conversation about Movant on the recordings. (Doc. 178, Br. at 14). The government argues that this claim fails because Movant has failed to clearly identify the conflicting statements. (Doc. 187 at 45-46). In reply, Movant does not directly address Ground Two, Claim One pertaining to counsel's failure to impeach Sewell and Paul.[8]

Absent identification of the conflicting statements in the grand jury proceedings and suppression hearings that counsel should have used, the Court cannot find that

---

[8]In reply, in arguing that the case was close, Movant mentions a portion of Sewell's testimony but does not present any conflicting statement by Sewell that counsel should have used to impeach him. (Doc. 215 at 17). Movant mentions a portion of Paul's suppression-hearing testimony and states that trial counsel failed to use the suppression testimony to impeach Paul's trial testimony that painted a "much worse picture of [Movant.]" (Id. at 18). Movant, however, does not identify any particular trial testimony by Paul that counsel should have impeached with the suppression testimony.

26

counsel was ineffective for failing to use those statements to impeach either Paul or Sewell.  Further, Movant does not show how testimony that the government redacted the recordings contradicts testimony that there was no conversation about Movant on the recordings or show that counsel was ineffective for using the testimony about redacted recordings to impeach either Paul or Sewell.

### 2.   Claim Two

Movant asserts that counsel was ineffective for failing to call as witnesses White, Lopez, South, Freese, and certain army officers. (Doc. 178, Br. at 14-15).  This claim fails because Movant does not show that any of these persons were available and willing to testify at trial and thus fails to show prejudice, as required to establish that counsel was ineffective.  See Gilreath, 234 F.3d at 552 n.12; see also Walker, 495 F. App'x at 17 ("Where a claim of ineffective assistance is based on counsel's failure to call a witness, the burden to show prejudice is heavy because 'often allegations of what a witness would have testified to are largely speculative.'" (quoting Sullivan v. DeLoach, 459 F.3d 1097, 1109 (11th Cir. 2006))).

27

### 3.   <u>Claim Three</u>

Movant asserts that counsel was ineffective for failing to introduce evidence of Clark's prior acts of untruthfulness and relies on his argument in Ground One, Claim Three.  (Doc. 178, Br. at 15).  Ground Two, Claim Three fails for the reasons stated above in Ground One, Claim Three.

### 4.   <u>Claim Four</u>

Movant asserts that counsel was ineffective for failing to ask relevant questions and subject the government's case to a meaningful adversarial testing.  (Doc. 178, Br. at 15).  Movant lists several pages of transcript and asserts that counsel was unprepared and unfocused.  (<u>Id.</u>).  Movant, however, does not identify any particular question or statement by counsel and does not specify which questions counsel should have asked or what counsel should have done to subject the government's case to a meaningful test.  (<u>Id.</u>).  Movant's non-specific assertions and failure to come forward with anything concrete counsel should have done is insufficient to establish that counsel provided ineffective assistance.  <u>See</u> <u>Wilson v. United States</u>, 962 F.2d 996, 998 (11th Cir. 1992) ("Conclusory allegations of ineffective assistance are insufficient." (quoting <u>United States v. Lawson</u>, 947 F.2d 849, 853 (7th Cir. 1991)) (internal quotation marks omitted)).

5.    **Claim Six**

Movant asserts that counsel provided ineffective assistance by failing to argue that there was a lack of evidence against Movant until after Dyson's arrest. (Doc. 178, Br. at 16). Movant asserts that agents had not included Movant as a conspirator until April 2008, after Dyson's arrest, indicating that Dyson implicated Movant to gain favor with the government. (Id.). The government responds that the record shows that as early as September 2007, Thrower had implicated Movant in the conspiracy and counsel was not ineffective for failing to present evidence to the contrary.[9] (Doc. 187 at 52-53). In Claim Six, Movant cites to nothing in the record to support his claim and has come forward with nothing in reply to contradict the government's assertion. Absent any showing to support his claim, he fails to show that counsel was ineffective on this matter.

6.    **Claim Seven**

The government argued in closing that Movant came up with the idea of arson, that Movant was charged with agreeing with Thrower and Dyson to burn the building,

---

[9]As early as October 2007, the government was using undercover tapes to corroborate Thrower's confession and to attempt to tape Movant. (Doc. 163 at 152-53).

29

and that it was up to the jury to decide whether Movant was in on the conspiracy to commit arson.  (Doc. 168 at 974-75, 977).

Counsel requested jury charges on (1) the credibility of witnesses – suggesting that the jury consider whether the witness seemed to have a good memory – and (2) impeachment – stating that the jury may consider whether the witness had been convicted of a crime involving dishonesty and the witness's reputation for truthfulness. (Doc. 91 at 7-10).  The Court gave a conspiracy charge – instructing the jury that the evidence must show, among other things, that the defendant willfully joined a plan that he knew was unlawful and that one of the conspirators knowingly committed an overt act in furtherance of the conspiracy.  (Doc. 168 at 1048).  Counsel did not request a charge on the limits of liability for unforeseeable actions of co-conspirators.

Movant argues that counsel was ineffective for failing to request jury instructions on prior acts of untruthfulness and the memory problems of witnesses. (Doc. 178, Br. at 17).  Movant also argues that counsel's failure to request a jury instruction on the limits of vicarious liability for the unforeseeable actions of co-conspirators was ineffective when there was doubt as to whether Movant was involved in the actual planning of the arson.  (Id.)

30

The government argues that Movant's claims regarding jury instructions on memory and dishonesty are without merit based on the charges that Movant's counsel did request. (Doc. 187 at 54-55). The government further argues that counsel's failure to request instructions on the limits of vicarious liability was not ineffective because the evidence showed that Movant had actual knowledge of the arson. (Id. at 55).

Absent a showing that the jury instructions were incorrect or inadequate, there is no ineffective assistance of counsel for failing to request different instructions. White v. United States, 2011 WL 1130882, at *10 (S.D. Ala. Feb. 11, 2011) (citing United States v. Prather, 205 F.3d 1265, 1270 (11th Cir. 2000), in discussion). Here, Movant's counsel did request jury instructions pertaining to memory and dishonesty, and Movant does not show what additional instruction counsel could have requested on those matters or how it would have changed the outcome. Further, not requesting an instruction on Movant's liability for acts that were not reasonably foreseeable was reasonable when the government sought to hold Movant liable based on his actual knowledge of the arson plan and did not attempt to hold Movant liable based on arson being a reasonable consequence of the conspiracy – with Movant having no actual knowledge of the arson plan. Movant fails to demonstrate that counsel was ineffective on the jury instructions issues that he raises in Ground Two, Claim Seven.

31

7.    **Claim Eight**

As indicated earlier, Clark testified that she went with Movant to Chicago in December 2006 for a few days and did not think it was for as many as eleven days. (Doc. 165 at 542-43).  In closing, the government stated that Clark had testified that she was with Movant in Chicago for two or three days.  (Doc. 168 at 1024).

Movant argues that counsel was ineffective for failing to object to the above closing statements, which he contends are mis-statements of Clark's actual testimony and prejudicial to the jury determining whether Movant had attended the closed-door meetings on arson.  (Doc. 178, Br. at 18).  The government responds that the closing statement was not a material misrepresentation of Clark's trial testimony, that the Court had discouraged objecting to the other party's statement on the evidence during closing, and that counsel was not ineffective for failing to object.  (Doc. 187 at 57).

The Court finds that Movant cannot show that counsel was unreasonable in failing to object and cannot show prejudice.  Clark testified that she and Movant had been in Chicago for a few days and not as many as eleven, and the government's closing statement did not contradict that testimony or significantly misrepresent it. Further, as stated earlier, Movant's own testimony – that he was in Chicago from December 19 through 29 – did not contradict Dyson's testimony that the arson

conversations occurred approximately two weeks before Christmas (approximately December 11) and did not contradict Thrower's testimony, which was non-specific as to when the arson conversations occurred.

### 8.   Claim Nine

Movant argues that counsel was ineffective for failing to present a reasonable defense.  (Doc. 178, Br. at 18-20).  Movant lists counsel's arguing matters contrary to the Federal Rules of Evidence, using an unreasonable defense strategy, moving for a mistrial based on an argument foreclosed by controlling case law, and failing to adequately review evidence that the government redacted.  (Id.).  The government argues that this claim fails for the same reasons that Movant's Ground One, Claim Eight failed.  (Doc. 187 at 57).

Absent a showing of prejudice to the defense, an invitation to second-guess counsel's trial strategy is insufficient to show that counsel performed ineffectively.  Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004).  Claim Nine fails.  Movant does not present an alternative reasonable defense, and, as discussed in the disposition of Ground One, Claim Eight (counsel's failure to develop a reasonable trial strategy), Movant fails to make any kind of proffer as to the alleged evidence that counsel should have used.

33

9.      **Claim Ten**

The un-redacted undercover recordings were provided to counsel and portions thereof were played to the jury.  (Doc. 167 at  879-82).  Counsel cross-examined Thrower on certain statements that he had made about Movant in the recorded under-cover conversations, and Thrower testified that he could not recall talking about Movant without listening to the recordings.  (Id. at 888, 891-93).  The Court questioned, "Can you tell him what he said about [Movant] and then ask him a question?"  (Id. at 888).  After counsel asked a follow-up question, Thrower insisted that without listening to the tape himself he could not recall what he had said.  (Id.).

Movant argues (1) that the government had stated that Thrower had been directed not to bring Movant up in the recorded under-cover conversations and (2) that – based on the government's late disclosure of the un-redacted version of under-cover recordings – counsel was unprepared to effectively cross-examine Thrower, Dyson, Paul, and Sewell on the fact that Thrower had in fact brought up Movant in the recorded conversations. (Doc. 193 at 36-37).  It is apparent that the jury became aware that Thrower did talk about Movant in the recordings, and it would have been redundant to further cross-examine Dyson, Paul, or Sewell to bring out that fact. Movant does not indicate how counsel should have cross-examined Thrower on the

34

recorded conversations in a different manner or suggest how a different cross-examination would have changed the outcome.  Movant does not indicate how cross-examining Dyson, Paul, or Sewell on the matter would have changed the outcome.  <u>See</u> <u>Wood</u>, 542 F.3d at 1309-10.

### 10.   <u>Claim Eleven</u>

Movant argues that trial counsel was ineffective for failing to properly understand the Federal Rules of Evidence and failing to seek admission of collateral bad acts by government witnesses, some of which may have been admissible under Rule 404(b).  (Doc. 193 at 37).  The government responds that counsel did introduce evidence of bad acts by government witnesses – including Thrower's being a convicted felon, Thrower's planning of a drug crime that would require guns, Thrower's involvement in a home invasion robbery, and Champagne's involvement in a robbery conspiracy – and that counsel fails to identify any other bad act that would have been admitted if counsel had relied on Rule 404(b).  (Doc. 206 at 21).  Movant does not reply on this issue.  (<u>See</u> Doc. 215).

Movant does not identify which bad acts may have been admissible under Rule 404(b), and his non-specific Claim Eleven fails to carry his burden of showing that he is entitled to relief under § 2255.

35

11.   **Claim Twelve**

Movant argues that counsel provided ineffective assistance by failing to bring out on cross examination an uncharged aggravated assault by Dyson and Thrower. (Doc. No. 193 at 36-38).  As stated earlier – in the discussion on Ground One, Claim Five – counsel sought to cross-examine Thrower regarding his bad character, (Doc. 165 at 615-17), and the Court found that Thrower's violence, assaults, and aggression were not relevant to his credibility and did not allow cross examination on Thrower's violence.  (Id. at 618-21).  In light of the Court's ruling, Movant does not show that counsel was ineffective for failing to cross-examine Dyson and Thrower on an uncharged aggravated assault.

C.   **Ground Three**

In Ground Three, Movant asserts prosecutorial misconduct based on the government (1) failing to disclose exculpatory/redacted recordings and investigative files, thus preventing Movant from developing an effective defense; (2) soliciting testimony from Thrower that Movant was not mentioned in the recordings; (3) misstating during closing Clark's testimony on the time that she and Movant were in Chicago; and (4) attempting to bolster witness credibility by questioning Dyson,

36

Thrower, and Champagne on the requirement that they tell the truth and presenting their plea agreements to the jury. (Doc. 178 at 8).

The government responds that the claims in Ground Three are procedurally barred because Movant failed to raise them on direct appeal. (Doc. 187 at 58-59).

Because Movant did not raise his claims of prosecutorial misconduct on direct appeal they are procedurally defaulted. See McKay, 657 F.3d at 1196. Movant has not argued that appellate counsel was ineffective for failing to raise these claims on direct appeal and has not otherwise overcome his procedural default. (See Doc. 193 at 35). Further, as discussed below, Movant's claims that trial counsel was ineffective for failing to preserve these claims for direct appeal also fail.

D.     **Ground Four**

In Ground Four, Movant argues that counsel was ineffective for failing to preserve for appeal four claims of prosecutorial misconduct. (Id. at 9). The Strickland standard applies.

1.     **Failing to Disclose**

Before trial, the government provided Movant with an incomplete copy of the undercover recordings. (See Doc. 167 at 869-72; Doc. 187 at 61). When the mistake came to light at trial, the government provided Movant with the complete version.

37

(See Doc. 167 at 870).  Movant sought a mistrial based on his late receipt of the full version of the recordings, which the Court declined granting at that time.  (Id. at 872). At the close of evidence, Movant renewed his motion, and the Court denied it.  (Id. at 963).

Movant asserts that counsel was ineffective in failing to preserve for appeal a prosecutorial-misconduct claim based on the government's late disclosure of the complete recordings.  (Doc. 178, Br. at 20-21).  Counsel did preserve this issue by moving for a mistrial in regard to the incomplete/redacted recordings.  Further, Movant identifies no specific exculpatory evidence that the government failed to disclose. Movant fails to demonstrate that counsel was ineffective on this matter.

### 2.    Soliciting Testimony from Thrower

Thrower testified on cross-examination by Movant's counsel that he did not talk about Movant on the undercover recordings.  (Doc. 166 at 676-77).  Those recordings, in which Movant was mentioned by Thrower, were played to the jury.  (See id. at 808 (counsel stating that Movant's name was mentioned in the redacted version)).

Movant asserts that counsel was ineffective in failing to preserve for appeal a claim of prosecutorial misconduct based on the government's solicitation of testimony from Thrower that Movant was not mentioned on the undercover recordings.  (Doc.

38

178, Br. at 20-21 (citing Doc. 166 at 677)).  Movant's citation to the record shows that counsel, not the government, solicited Thrower's testimony on this matter.  Moreover, (1) the jury became aware that Movant was mentioned in the undercover recordings when those recordings were played to the jury and (2) counsel moved for a mis-trial based on the late disclosure of the complete recording.  Movant fails to show that counsel was ineffective for failing to raise a prosecutorial-misconduct claim on this matter.

### 3.   Closing Argument

As stated earlier, Clark testified that she went with Movant to Chicago in December 2006 for a few days and that she did not think it was for as many as eleven days. (Doc. 165 at 542-43).  In closing, the government stated that Clark had testified that she was with Movant in Chicago for two or three days. (Doc. 168 at 1024).  After closing, the Court instructed the jury that it must base its decision only on the testimony and evidence presented at trial and that what the lawyers in the case had stated was not evidence. (Doc. 168 at 1040, 1042).

Movant asserts that counsel was ineffective in failing to preserve for appeal a claim of prosecutorial misconduct based on the government's closing statement

39

regarding Clark's testimony about the time that she and Movant were in Chicago. (Doc. 178, Br. at 20-21).

"Prosecutorial misconduct during closing argument does not require reversal unless the comments are both improper and prejudicial to a substantial right of the defendant." United States v. Rodriguez-Suarez, 856 F.2d 135, 139 (11th Cir. 1988). "Because statements and arguments of counsel are not evidence, improper statements can be rectified by the district court's instruction to the jury that only the evidence in the case be considered." United States v. Smith, 918 F.2d 1551, 1562 (11th Cir. 1990).

As found in the discussion on Ground Two, Claim Eight, the government's closing statement did not significantly misrepresent Clark's testimony. Moreover, any variation between Clark's testimony and the government's statement was adequately addressed when the Court instructed the jury that counsel's statements were not evidence. The Court finds nothing on this issue that counsel should have preserved for appellate review.

### 4.    Bolstering Witnesses

In opening, counsel for Movant stated that the government would trot out to testify a group of "convicted felons, bad men, who will do anything, including lie to you, to stay out of prison." (Doc. 162 at 55). Counsel for Movant classified Thrower

as "the biggest liar" and a man who "lies to . . . stay out of jail."  (Id. at 56, 64).

Counsel stated, "Please pay close attention to the witnesses, and at the end of this trial,

you are going to see that these colorful characters are a bunch of thugs, criminals, and

liars who will testify against [Movant] to get a reduced sentence or, like Thrower,

avoid jail time altogether." (Id. at 69).  At trial, the government introduced the plea

agreements of Dyson, Champagne, and Thrower.  (Doc. 163 at 233; Doc. 165 at 456-

58, 560).  On questioning by the government, Dyson, Champagne, and Thrower

testified that they had agreed in their plea agreements that they were supposed to

testify truthfully.  (Doc. 163 at 234; Doc. 165 at 457, 560).

Movant asserts that counsel was ineffective in failing to preserve for appeal a

claim of prosecutorial misconduct based on impermissible bolstering of Dyson,

Thrower, and Champagne.   (Doc. 178, Br. at 21). Movant argues that counsel

attempted to paint Dyson, Thrower, and Champagne only as bad people, not unreliable

people; that introduction of their plea agreements was unwarranted; and that the

prosecution improperly bolstered their credibility by questioning Dyson, Thrower, and

Champagne on the requirement that they tell the truth and by presenting their plea

agreements to the jury.  (Id.).  The government argues that questioning the above

witnesses on the requirement that they tell the truth and presenting their plea

41

agreements was proper under United States v. Cano, 289 F.3d 1354, 1365-66 (11th Cir. 2002).  (Doc. 187 at 65).

"[I]f defense counsel attacks a witness's credibility during opening the prosecutor may rehabilitate the witness on direct examination.  Specifically, a prosecutor may 'elicit testimony regarding the truth-telling portion of a cooperation agreement during direct examination.'"  United States v. Delgado, 56 F.3d 1357, 1368 (11th Cir. 1995) (quoting United States v. Cruz, 805 F.2d 1464, 1480 (11th Cir. 1986)) (finding no error in the introduction of portions of plea agreements containing promises to testify truthfully); see also Cano, 289 F.3d at 1354, 1366.  Movant attacked Dyson's, Thrower's, and Champagne's credibility.  There was no prosecutorial misconduct in introducing the portions of the plea agreements pertaining to the promises to testify truthfully or in eliciting testimony on those agreements.  Counsel was not ineffective for failing to preserve this as an issue for appeal.

### E.   **Ground Five**

At Movant's trial, in February 2009, the government introduced the Javier letter, written by Dyson to a person named Javier, which indicates that Dyson had been told about a federal investigation involving persons named Rasheeda and Bird.  (See Gov. Ex. 18 at 5-6; Doc. 164 at 376).  At trial, counsel cross-examined Dyson on the Javier

42

letter and asked him which agent had told him about the person named Bird. (Doc. 164 at 372). Dyson testified that the information came from Shorty Mark. (Doc. 164 at 372).

After Movant's trial, Dyson was indicted for crimes – committed from on or about February 20, 2008, through on or about June 1, 2010 – that involved selling crime information to other inmates and instructing them to lie to officials that they had personal knowledge about those crimes in the hope of reducing their sentences. See United States v. Dyson, No. 1:10-cr-0514-RWS-CCH (N.D. Ga. Mar. 5, 2012) (hereinafter "Dyson"). Dyson pleaded guilty to two counts of aiding and abetting false statements, and the Court imposed two concurrent eighteen-month prison terms. Id.

In Ground Five, Movant asserts that Dyson's testimony against Movant has been brought into question based on Dyson's guilty plea to an information-for-sale scheme (charged as being operative during the time that Dyson testified in Movant's case) in which Dyson assisted others in providing false testimony in order to lessen their sentences. (Doc. 193 at 9-35). Movant asserts that the government violated due

process, <u>Giglio</u>, and <u>Brady</u> in allowing Dyson to testify against Movant without disclosing Dyson's involvement in the information-for-sale scheme.[10]  (Doc. 193 at 9).

Movant requests an evidentiary hearing on whether the government knew at the time of Movant's trial that Dyson was involved in the information-for-sale scheme and failed to inform the defense.  (Doc. 215 at 6).  In support, Movant contends (1) that in August and November 2008, Assistant United States Attorney Robert C. McBurney, prosecutor in his criminal case, interviewed Marcus Watkins (also known as Shorty Mark), who confessed to McBurney his and Leon Lumsden's (also known as Sharky) involvement in the scheme; (2) that the government possessed the Javier letter;[11] and (3) that Dyson's trial testimony showed that he knew Watkins/Shorty-Mark.  (<u>Id.</u> at 10-12).  Movant argues that based on the Javier letter, McBurney's prior interviews with Watkins/Shorty-Mark, and Dyson's testimony indicating that he knew Watkins/Shorty-

---

[10]<u>See</u> <u>Giglio v. United States</u>, 405 U.S. 150, 153-55 (1972) (holding that due process requires the prosecution to give to the defense any evidence in its possession or control that pertains to perjured or false testimony that is material to the case); <u>Brady</u>, 373 U.S. at 87 ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

[11]The record indicates that the government possessed the letter at least one week before Dyson gave testimony at Movant's trial.  (<u>See</u> Doc. 163 at 292).

44

Mark, McBurney had to have known that Dyson was involved in the information-for-sale scheme.  (Id. at 12).[12]

"[I]f the petitioner 'alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim.'" Aron v. United States, 291 F.3d 708, 714 (11th Cir. 2002) (quoting Holmes v. United States, 876 F.2d 1545, 1552 (11th Cir.1989)).  "[A] petitioner need only *allege*–not prove–reasonably specific, non-conclusory facts that, if true, would entitle him to relief."  Id. at 715 n.6.  However, conclusory allegations, that "do not give details or . . . example[s]" of specific "testimony or statements" in support of a claim, do not require an evidentiary hearing.  Lynn, 365 F.3d at 1238-39.

To establish a Brady claim, the movant or habeas petitioner must "prove that (1) the government possessed evidence favorable to him; (2) the defendant did not possess the evidence and could not have obtained it with reasonable diligence; (3) the government suppressed the favorable evidence; and (4) the evidence was material." Davis v. Terry, 465 F.3d 1249, 1254 (11th Cir. 2006).  "To establish a Giglio claim,

---

[12]That Dyson was indicted for his involvement in an information-for-sale scheme that was charged as being operative as early as February 2008 does not show that the government became aware of those crimes in February 2008, or prior to movant's trial, and Movant's arguments along that line are not further addressed.  (See Doc. 215 at 12-13).

a habeas petitioner must prove: (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material, i.e., that there is any reasonable likelihood that the false testimony could have affected the judgment." Trepal v. Sec'y, Fla. Dep't of Corr., 684 F.3d 1088, 1107-08 (11th Cir. 2012) (quoting Guzman v. Sec'y, Dep't of Corr., 663 F.3d 1336, 1348 (11th Cir. 2011)) (internal quotation marks omitted), cert. denied, _ U.S. _, 133 S. Ct. 1598 (2013).

Movant's assertion that "McBurney had to know before [Movant's] trial that . . . Dyson was also involved in the information-for-sale scheme" – without specific testimony or evidence that supports his claim does not require an evidentiary hearing. (Doc. 215 at 12). The specific facts alleged by Movant, (id. at 10-12), if true, do not show that McBurney knew at the time of Movant's trial of Dyson's involvement, if he was involved at the time of the trial,[13] and thus an evidentiary hearing is not required to establish those facts. The Javier letter, written by Dyson, does not refer to

---

[13]The Court is well aware that an indictment may allege a time frame that is broader than the times at which a defendant committed specific acts. Although the indictment alleged, among other things, that Dyson was involved in a conspiracy from as early as February 20, 2008, through on or about June 1, 2010 (the time during which Dyson was housed in the Atlanta City Detention Center), the earliest charged acts occurred in May 2009, after Movant's trial. Indictment at 1-2, 7-14, Dyson.

46

Watkins/Shorty Mark.  Therefore, knowledge of the Javier letter and the interview of Watkins/Shorty-Mark do not show a connection between Dyson and the information-for-sale scheme or show that McBurney should have been aware that Dyson was involved, if he was at that time, in the information-for-sale scheme.  Further, Dyson's comment at trial that it was Watkins/Shorty Mark who told him about Bird does not show that Bird was being investigated for the information-for-sale scheme, that Dyson knew about the information-for-sale scheme, that Dyson was involved in the information-for-sale scheme, or that the government had reason to know that Dyson was involved in the information-for-sale scheme.  The facts outlined by Movant in his argument, even if proved, simply do not show that the government, at the time of trial, knew that Dyson was involved in the information-for-sale scheme or even that Dyson was at that time involved in the scheme.  Movant is not entitled to an evidentiary hearing, and Ground Five fails.

## IV.   **Motion for a New Trial**

Movant seeks a new trial under Fed. R. Crim. P. 33 based on the evidence that Movant discovered in December 2011 regarding Dyson's involvement in the

47

information-for-sale scheme.[14]   (Doc. 195).   Movant asserts that the "jury had no

knowledge that Dyson was involved in an outrageous scheme which related directly

to providing false jury testimony" and that without Dyson's testimony, the only

support for his conviction is Thrower's inherently unbelievable testimony and

circumstantial evidence, which would not have carried the day.   (Id. at 6).   The

government argues, among other things, that Movant's motion must be dismissed as

time barred because it was not filed within three years of the jury's February 25, 2009,

guilty verdict.   (Doc. 206 at 22-23).   The government further argues that newly

discovered impeachment evidence, absent a Brady violation, does not provide grounds

for a new trial.   (Id. at 23-24).   Movant replies that his motion for judicial notice was

timely and that his motion for a new trial serves to re-label his motion for judicial

notice as a motion for a new trial.   (Doc. 215 at 3 n.2).

"Any motion for a new trial grounded on newly discovered evidence must be

filed within 3 years after the verdict or finding of guilty."   Fed. R. Crim. P. 33(b)(1).

---

[14]Movant states that he files his counseled motion for a new trial in conjunction
with his earlier *pro se* motion for judicial notice.   (Doc. 195 at 1).   Movant's counseled
motion for a new trial, filed on October 19, 2012, raises issues first raised in Movant's
December 12, 2011, *pro se* motion for judicial notice, in which Movant states that he
learned on December 8, 2011, of Dyson's involvement in the information-for-sale
scheme.   (Doc. 181; Doc. 195 at 4).

48

> To succeed on a motion for new trial based on newly discovered evidence, the movant must establish that (1) the evidence was discovered after trial, (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence, (3) **the evidence is not merely cumulative or impeaching**, (4) the evidence is material to issues before the court, and (5) the evidence is such that a new trial would probably produce a different result.

United States v. Jernigan, 341 F.3d 1273, 1287 (11th Cir. 2003) (emphasis added) (quoting United States v. Ramos, 179 F.3d 1333, 1336 n. 1 (11th Cir. 1999)). "Failure to meet any one of these elements will defeat a motion for a new trial." United States v. Starrett, 55 F.3d 1525, 1554 (11th Cir. 1995).

Although Movant submitted his *pro se* motion for judicial notice within three years of his conviction, he did not move for a new trial until more than three years had passed, and his motion for a new trial is untimely. Further, even if the Court construed Movant's *pro se* motion for judicial notice as a motion for a new trial, his motion would fail. As discussed above, Movant fails to show a Brady or Giglio violation. Absent such a showing, the new evidence regarding Dyson's involvement in an information-for-sale scheme, if established that he was involved at the time of trial, is only impeaching and does not provide grounds for a new trial. United States v. Noriega, 117 F.3d 1206, 1221 (11th Cir. 1997) ("Evidence regarding the bribing of a witness, although disturbing, clearly does constitute impeachment material, and

49

therefore, [the movant] cannot satisfy the . . . standard [for a new trial based on newly discovered evidence].").  Accordingly, it is recommended that the motion for a new trial be denied.

## V.   **Certificate of Appealability**

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Section 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  Section 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  To satisfy that standard, a movant must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Lott v. Attorney Gen., 594 F.3d 1296, 1301 (11th Cir. 2010) (quoting Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)) (internal quotation marks omitted).

50

> "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," . . . a certificate of appealability should issue only when the prisoner shows both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."

Jimenez v. Quarterman, 555 U.S. 113, 118 n.3 (2009) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

It is recommended, based on the above analysis of Movant's grounds for relief, that a COA is unwarranted.  If the Court adopts this recommendation and denies a COA, Movant is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts.

**VI.    Conclusion**

**IT IS RECOMMENDED** that this § 2255 motion, as amended, (Docs. 178, 193), Movant's motion for a new trial, (Doc. 195), and a certificate of appealability be **DENIED**.

The Clerk of Court is **DIRECTED** to withdraw the referral of this § 2255 motion to the undersigned Magistrate Judge.

51

**IT IS SO RECOMMENDED and DIRECTED** this 13th day of June, 2013.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)